CONVENTION CENTER INN, LTD. *v.*
DOW CHEMICAL COMPANY ET AL.

(No. 79-993030—Decided
February 14, 1984.)

Court of Common Pleas of
Cuyahoga County.

*Messerman & Messerman Co.,
L.P.A.,* and *Gerald A. Messerman,* for
Convention Center Inn, Ltd.

*Rivkin, Leff, Sherman & Radler* and
*Bruce D. Drucker,* for Dow Chemical

Co., Amspec, Inc., and Masonry
Systems Internatl.

*Cronquist, Smith, Marshall & Kag-
els* and *John M. Cronquist,* for Kelley
Steel Erectors, Inc. and Masonry
Systems of Ohio, Inc.

*Buckingham, Doolittle & Burroughs*
and *Gary Banas,* for Bialosky and
Manders.

*Gallagher, Sharp, Fulton & Norman*
and *Virginia L. Reichard,* for Kleist
Development Co.

*Mansour, Gavin, Gerlack & Manos
Co., L.P.A.,* and *Julius R. Gerlack,* for
Midwest Construction Management.

*Reminger & Reminger Co., L.P.A.,*
and *Doug Fifner,* for Chacos & As-
sociates.

*Baker & Hostetler* and *A. J. Knopp,*
for Turner Construction Co.

FRIEDMAN, J. The defendants Dow
Chemical Company ("Dow") and Am-
spec, Inc. ("Amspec") have filed mo-
tions for judgment on the pleadings on
all cross-claims for punitive damages
and for summary judgment on the
claims of Masonry Systems of Ohio, Inc.
("MSO") and Kelley Steel Erectors, Inc.
("Kelley") for loss of business and loss
of business reputation.

Upon consideration of Dow's and
Amspec's motions, the briefs of the par-
ties, and the applicable law, Dow's and
Amspec's motions are granted to the ex-
tent and for the reasons indicated below.

I

Principles and Policy

This action was originally filed on
December 27, 1978, by Convention
Center Inn, Ltd. ("CCI") shortly after
the filing of a similar action in which the
properties of Sarabond, the same prod-
uct, were put in issue. The first case,
*Central Natl. Bank of Cleveland* v. *Dow
Chemical Co.,* Cuyahoga Common Pleas
No. 78-992373, went to trial in 1982. The
trial lasted more than four months and
was concluded in February 1983. The

parties here have predicted that the trial of this case will be at least as long.

The facts are complex. The legal issues are substantial. The burden imposed upon a jury is enormous. This court will not increase that burden by converting the courtroom into a cassino parlor, with numerous parties vigorously pursuing the prospect of windfall gains in the form of extravagant punitive damages awards.

No party is entitled to punitive damages as a matter of right. There is no vested right to even sue for punitive damages. The purpose of punitive damages is not to compensate. Their purpose is to punish and deter.

"* * * [T]he court in *Detling* [v. *Chockley* (1982), 70 Ohio St. 2d 134], *supra,* stated, at page 136, that, '[t]he rationale for allowing punitive damages has been recognized in Ohio as that of punishing the offending party and setting him up as an example to others that they might be deterred from similar conduct: "The principle of permitting damages, in certain cases, to go beyond naked compensations, is for example, and the punishment of the guilty party for the wicked, corrupt, and malignant motive and design, which prompted him to the wrongful act." ' (Citations omitted.)" *Locafrance United States Corp.* v. *Interstate Distrib. Serv., Inc.* (1983), 6 Ohio St. 3d 198, 202.

The litigants in this case are not pursuing punitive damages solely for the purpose of achieving the social objectives of punishment and deterrence. They are clearly motivated by self-interest. Since courts recognize that few litigants would be willing to pursue social objectives at their own expense, with no promise of reimbursement and no possibility of reward, self-interest is a perfectly acceptable motivation. However, the promise of reward need not be held out to *everyone* who happens to get sued by an injured party. There is no suggestion that plaintiff is incapable of pursuing punitive damages without the assistance of the cross-claiming defendants. It is unseemly to have the same objective pursued by all, with the cross-claiming defendants engaged in the pursuit solely by reason of the fact that they were sued by the plaintiff.

In pretrial conferences and in pleadings submitted to this court, the court has been advised by all parties that the Bond Court Hotel is in need of very costly repairs. At various times, it has been suggested to this court that the hotel might constitute a public hazard if repairs were not undertaken immediately.

The primary purpose of this lawsuit is to determine whether any or all of the named defendants are responsible for the cost of the needed repairs and, if so, to what extent. The court will not permit the fair and expeditious resolution of that issue to be impeded by extraneous and unnecessary considerations wholly unrelated to adjudication of the rights of the parties.

All of the cross-claiming defendants are free to pursue their claims for contribution and indemnity. All of the cross-claiming defendants will be permitted to seek all compensatory damages to which they may be legally entitled. No private interests of any of the defendants will, therefore, be adversely affected by dismissal of any cross-claim for punitive damages.

Plaintiff will not be allowed to recover against any defendant, absent proof that the particular defendant is legally responsible for damages suffered by the plaintiff. The cross-claiming defendants will be free to demonstrate that any injury suffered by the plaintiff was *solely* the fault of Dow or of any other party.

It is in the context of those considerations that the court will assess Dow's and Amspec's motions for judgment on the pleadings and for summary judgment. The pleadings will be ex-

amined against a rigid standard for the purpose of determining whether they legitimately state claims for punitive damages. The law requires nothing less.

## II
### Sufficiency of Liability Allegations

Last year, the Supreme Court of Ohio decided *Hoskins* v. *Aetna Life Ins. Co.* (1983), 6 Ohio St. 3d 272. The issue before the court in that case was virtually identical to that which is presented by Dow's motion for judgment on the pleadings. In *Hoskins,* the plaintiff charged Aetna with breach of contract, and with acting in bad faith in refusing to pay a claim of an insured upon adequate proof. Prior to trial, the trial court dismissed the bad faith claim and the punitive damages prayer based on that claim. Solely on breach of contract, the plaintiff prevailed at trial. On appeal, the Court of Appeals for Cuyahoga County ruled that dismissal of the tort claim and its attendant prayer for punitive damages was improper. The Supreme Court agreed to hear the matter for the purpose of considering the following issue:

"The key issue presented is whether appellees have sufficiently pleaded a cause of action in tort, stemming from the refusal of their insurer to pay their claim, to allow them to proceed on a punitive damages claim against their insurer." *Id.* at 275.

Notwithstanding the plaintiff's allegation that the defendant's conduct was "willful and wrongful," the court concluded that the complaint did "not assert sufficient facts to demonstrate that appellant's conduct in denying its insured's claim was motivated by actual malice." *Id.* at 278. That conclusion did not rest on the notion that the complaint failed to state a cause of action upon which punitive damages might be awarded *in an appropriate case.* To the contrary, the court expressly stated:

"Inasmuch as the breach of the duty to act in good faith is tortious in nature, punitive damages may be recovered against an insurer who breaches his duty of good faith in refusing to pay a claim of its insured upon adequate proof." *Id.* at 277.

The principle of *Hoskins* is clear. A claim for punitive damages must be dismissed if the complaint fails to allege facts from which the essential element of "actual malice" may be inferred. *Columbus Finance* v. *Howard* (1975), 42 Ohio St. 2d 178, 183 [71 O.O.2d 174].

The cross-claims of each of the parties will be examined for the purpose of determining whether they satisfy the *Hoskins* test.

## A
### Turner's Cross-Claims

Turner Construction Company's ("Turner") amended cross-claim purports to set forth six counts against Dow and Amspec. Two of those counts, VI and VII, seek indemnification and contribution. Turner does not and may not seek punitive damages on those claims. See *Travelers Indemnity Co.* v. *Trowbridge* (1975), 41 Ohio St. 2d 11 [70 O.O.2d 6].

Turner also asserts claims against Dow which sound in negligence (Count I), products liability (Count II), misrepresentation (Count IV), and "willful, wanton, and fraudulent concealment" (Count V). None of those claims states facts upon which punitive damages may be awarded.

The negligence count (Count I) alleges simply "that Dow was negligent in recommending the use of Sarabond as well as in its manufacture." There is no allegation that Dow acted with malice or that Dow engaged in intentional, reckless, wanton or willful conduct sufficient to evidence malice. Absent such allegations, punitive damages are not recoverable on a negligence claim. See, *e.g., Columbus Finance* v. *Howard, supra; Moore* v. *McCarty's Heritage,*

*Inc.* (1978), 62 Ohio App. 2d 89 [16 O.O.3d 219].

The products liability claim, Count II, asserts only "that the Sarabond which was manufactured and sold by Dow was defective." That allegation, devoid of any suggestion of actual malice, is insufficient to plead a claim upon which punitive damages may be awarded. See, *e.g., Leichtamer* v. *American Motors Corp.* (1981), 67 Ohio St. 2d 456 [21 O.O.3d 285].

The misrepresentation claim (Count IV), alleges only the elements of fraud. Proof of fraud, by itself, is insufficient to justify an award of punitive damages. There must be, in addition, allegation and proof of malice consisting of intentional and deliberate acts committed for the specific purpose of injuring the plaintiff. See, *e.g., Logsdon* v. *Graham Ford Co.* (1978), 54 Ohio St. 2d 336, 339 [8 O.O.3d 349]. Turner's misrepresentation claim does not assert facts upon which punitive damages may be awarded.

Count V of Turner's cross-claim expressly alleges "that Dow, Kelley and Masonry Systems of Ohio negligently, willfully, wantonly, and fraudulently concealed" the fact that Sarabond "was inherently detrimental to the integrity of the buildings in which Sarabond was utilized." That allegation is *conceivably* sufficient to satisfy the *liability* component of a claim for punitive damages. But, see, *Hoskins* v. *Aetna Life Ins. Co., supra.*

## B
### Midwest's Cross-Claims

Midwest Construction Management Company's ("Midwest") claims for contribution and indemnity (Counts I, II and III) will not support a punitive damages award. Nor will the remainder of Midwest's claim do so.

Midwest's products liability claim (Count IV) simply alleges "that the Sarabond which was manufactured and sold by Dow and/or Amspec was defective." Its fraud claim (Count VI) alleges that Dow, MSO, and Kelley falsely represented that masonry panels constructed with Sarabond would be strong and durable. Neither count alleges actual malice or facts from which actual malice might be inferred. Neither is sufficient, therefore, to support a claim for punitive damages.

In Count VII, on the other hand, Midwest claims that Dow, Amspec, MSO, and Kelley "negligently, willfully, wantonly and fraudulently [*sic*] concealed" the fact "that Sarabond and the masonry system utilized was inherently detrimental to the integrity of the buildings in which Sarabond was utilized." That allegation is *conceivably* sufficient to satisfy the *liability* requirement of an action for punitive damages.

## C
### Kelley's and MSO's Cross-Claims

Almost four years after this action was commenced, Kelley and MSO filed identical cross-claims seeking punitive damages. Both assert grounds previously pleaded with great particularity in CCI's original complaint.

The Kelley and MSO amended answers each allege that plaintiff's claim for punitive damages "is unconstitutional as it violates Defendants' rights to due process and equal protection under the law." Kelley and MSO apparently abandon that defense in seeking punitive damages from Dow and Amspec.

The Kelley and MSO claims for indemnity and contribution (Counts I, II and III) provide no basis for a punitive damages award. None of the litigants seriously contends otherwise.

Count IV of the Kelley and MSO counterclaims alleges that Dow and Amspec misrepresented the properties of Sarabond for the purpose of inducing Kelley and MSO to use the product, and that the representations were made "recklessly and without sufficient

knowledge as to their truth or falsity." In Count IV, Kelley and MSO focus upon the relationship between Sarabond and corrosion, and allege that Dow and Amspec engaged in "intentional, reckless, wanton, willful, gross, fraudulent, and malicious [conduct], manifesting a complete and perverse disregard for the health, safety, business and well-being of Defendant Kelley * * *."

Counts IV and V, read jointly, allege facts sufficient to satisfy the *liability* component of a claim for punitive damages.

### III

### Sufficiency of Damages Allegations

The only claims which allege facts which, if true, are conceivably sufficient to establish liability for punitive damages are: (1) Turner's Count V (willful concealment); (2) Midwest's Count VII (willful concealment); and (3) Kelley and MSO's Counts IV and V (fraud and misrepresentation). The sufficiency of each of those counts must now be measured against an additional standard: namely, there must be pleading and proof of an underlying independent compensatory damage claim as a predicate to a punitive damages award.

Punitive damages may be awarded only upon allegation and proof of actual pecuniary loss. *Richard* v. *Hunter* (1949), 151 Ohio St. 185 [39 O.O. 24]. The converse is equally true:

"It is well-established that punitive damages may not be recovered in the absence of proof of actual injury or damage." *Ali* v. *Jefferson Ins. Co.* (1982), 5 Ohio App. 3d 105, 108. Because the Turner and Midwest cross-claims fail to allege any pecuniary injury for which compensatory damages may be awarded, they fail to allege facts upon which punitive damages may be awarded.

Turner's sole allegation of damages is repeated in virtually identical language in four separate counts. In Count I (negligence), Count II (products liability), and Count IV (misrepresentation), Turner alleges that:

"[It] * * * expended monies and manpower in an effort to assist Plaintiff in resolving problems which Plaintiff perceived with the Bond Court Hotel; that Turner has incurred and will continue to incur legal fees and other expenses in connection with this litigation; and that the amount of damage is presently unascertainable but is believed to be in excess of Two Hundred Fifty Thousand Dollars ($250,000)."

That allegation of damages is significantly omitted from Count V of Turner's cross-claim — the only claim which might conceivably allege facts sufficient to state a claim for punitive damages.

Turner's repeated allegation that it spent money assisting the plaintiff in resolving problems with the hotel, and that it has incurred and will continue to incur legal fees and other expenses in this litigation, is insufficient to state a claim for compensatory damages. If Turner voluntarily rendered services to plaintiff, Turner may not charge Dow for Turner's act of generosity. Nor may Turner recover attorney fees expended by it in defending against an action brought by plaintiff against Turner. There are few circumstances in which attorney fees and expenses of litigation are recoverable. Turner fails to allege any circumstances which would justify such a recovery. *Sorin* v. *Bd. of Edn.* (1976), 46 Ohio St. 2d 177 [75 O.O.2d 224].

Turner's argument that it has sufficiently alleged compensatory damages by reason of its claim for attorney fees is unpersuasive. Although attorney fees may in the jury's discretion be awarded where punitive damages are otherwise properly pled and proven, a claim for attorney fees will not serve as the predicate for an award of punitive

damages. See, *e.g., Stuart* v. *Natl. Indemn. Co.* (1982), 7 Ohio App. 3d 63.

The logic of Turner's position would reduce to a nullity the principle that punitive damages are awardable *only* upon allegation and proof of compensatory damages. All litigants incur expenses of litigation and attorney fees. Turner has incurred such expenses because it was sued by CCI, not because Dow manufactured Sarabond. Turner may not hold Dow and Amspec responsible for CCI's conduct.

The same principle is dispositive of Midwest's claim. Midwest claims *no* damages other than legal fees and expenses of litigation, alleged to be in excess of $300,000. That allegation of damages is repeated in four counts of Midwest's cross-claim. It is, however, conspicuously absent from the only claim which states facts conceivably sufficient to establish liability for punitive damages. In Count VII, Midwest simply claims that it is "entitled to punitive damages in the amount of FIVE MILLION DOLLARS ($5,000,000.00)." Absent an allegation of damages in addition to payment of attorney fees and the expenses of litigation, Midwest fails to state a claim upon which punitive damages may be awarded.

The Turner and Midwest cross-claims for punitive damages, because they fail "to allege a set of facts which, if true, would establish defendant's liability" for such damages, will not withstand Dow's and Amspec's seeking to dismiss the punitive damages component of the Turner and Midwest cross-claims. *Walters* v. *First Natl. Bank of Newark* (1982), 69 Ohio St. 2d 677, 679 [23 O.O.3d 547]. That is not true of the Kelley and MSO cross-claims.

The Kelley and MSO allegations of loss of business and loss of business reputation, if true, would support an independent compensatory damages award. Counts IV and V of the Kelley and MSO cross-claims may not, therefore, be dismissed on motion for judgment on the pleadings.

## IV

### Dow's and Amspec's Motions for Summary Judgment as to Kelley and MSO

Civ. R. 56(C) provides, in relevant part:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Here, the depositions and pleadings cited by Dow and Amspec demonstrate that there is no genuine issue of fact with respect to the Kelley and MSO allegations of loss of business and loss of business reputation. Thus, Kelley and MSO are without an independent damage claim to serve as a predicate for their prayers for punitive damages.

Depositions and answers to interrogatories show that MSO ceased building masonry panels in 1976. Its decision had nothing to do with the alleged corrosive property of Sarabond. That property was not discovered by MSO until long after it stopped building panels.

The supporting documentation presented by Dow and Amspec, in the form of depositions of Kelley's and MSO's own officers and their own answers to interrogatories, fully demonstrates that neither Kelley nor MSO has lost any business or suffered any damage to their reputations as a result of Dow's and Amspec's alleged misconduct. No Kelley or MSO officer or employee has identified any loss of business or damage to business reputation, though specifically invited to do so. Similar invitations, contained in interrogatories submitted to

Kelley and MSO, have yielded the same negative result.

Upon such proof, all cognizable under Civ. R. 56(C), Kelley and MSO have chosen to submit nothing, affidavit or otherwise, to dispute the documentary proof. The court must, therefore, follow the command of Civ. R. 56(E):

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Kelley and MSO have offered no evidence to refute the material submitted by Dow and Amspec in support of their motions for summary judgment. They rest upon their bare pleadings, even though they have had five years of discovery to develop their evidence. In fact, Kelley and MSO cite the deposition testimony of a Turner representative in an attempt to create an issue of fact. That testimony actually supports Dow's and Amspec's position that Kelley and MSO suffered no loss of business or business reputation.

Kelley and MSO, therefore, ignore the unequivocal direction of the Supreme Court of Ohio that mere allegations are insufficient to withstand a motion for summary judgment:

"There should be no doubt that resting on mere allegations against a motion for summary judgment and eschewing the mandate of Civ. R. 56(E) is insufficient. See, *e.g., Savransky* v. *Cleveland* (1983), 4 Ohio St. 3d 118; *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64 [8 O.O.3d 73]; *North* v. *Pennsylvania RR. Co.* (1967), 9 Ohio St. 2d 169 [38 O.O.2d 410]; *Dome Laboratories* v. *Farrell* (Alaska 1979), 599 P. 2d 152; *Livingston* v. *Begay*

(1982), 98 N.M. 712, 652 P. 2d 734; and *Seeborg* v. *General Motors Corp.* (1978), 284 Ore. 695, 588 P. 2d 1100." *King* v. *K.R. Wilson Co.* (1983), 8 Ohio St. 3d 9, 11.

The unrebutted evidence demonstrates that Kelley and MSO suffered neither loss of business nor damage to reputation as a result of Dow's and Amspec's alleged misconduct. Kelley and MSO, therefore, have no underlying claim for pecuniary loss and Dow and Amspec are entitled to summary judgment on the Kelley and MSO cross-claims for punitive damages. *Siegler* v. *Batdorff* (1979), 63 Ohio App. 2d 76 [17 O.O.3d 260]; *Cunningham* v. *J. A. Myers Co.* (1964), 176 Ohio St. 410 [20 O.O.2d 379].

## V
### Conclusion

Turner, Midwest, and Kelley and MSO seek contribution and indemnity from Dow, Amspec and others. To the extent that such relief is sought on the basis of the separate counts contained in the cross-claims of each, Dow's and Amspec's motions for judgment on the pleadings are well-taken. Each cross-claim states a claim upon which contribution or indemnity might, upon proper proof, be allowed. None, however, with the exception of Counts IV and V of the Kelley and MSO cross-claims, states a claim upon which punitive damages may be allowed.

The essential predicate of Counts IV and V of the Kelley and MSO cross-claims, the allegation that the cross-claimants have suffered loss of business and damage to their business reputations, is refuted by the depositions and answers to interrogatories cited by Dow and Amspec.

Finally, even if Turner's, Midwest's, and Kelley's and MSO's prayers for punitive damages were not dismissed by this court for the reasons set forth above, they would be dismissed in the

exercise of the court's discretion and in the interest of the orderly administration of justice. As noted at the outset of this opinion, there is no vested right to punitive damages. The social purposes to be achieved by punitive damages can adequately be served by the plaintiff's prayer against Dow and Amspec without unnecessarily burdening the jury and complicating the issues with the punitive damage prayers of Turner, Midwest, and Kelley and MSO.

### Order

Accordingly, it is hereby ordered that:.

(1) The prayer of Turner for punitive damages against Dow and Amspec is dismissed.

(2) The prayer of Midwest for punitive damages against Dow and Amspec is dismissed.

(3) The motions of Dow and Amspec for summary judgment with respect to the claims of Kelley and MSO set forth in Counts IV and V of their cross-claims, that each suffered loss of business and damage to its business reputation, are granted.

(4) The prayers of Kelley and MSO for punitive damages against Dow and Amspec are dismissed.

(5) Except to the extent herein indicated, the motions of Dow and Amspec for judgment on the pleadings and for summary judgment are denied.

*Judgment accordingly.*