[Cite as *Lograsso v. Frey*, 2014-Ohio-2054.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100104**

## MICHAEL P. LOGRASSO

PLAINTIFF-APPELLEE

vs.

## ROBERT FREY, ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-798334

**BEFORE:** Jones, P.J., E.A. Gallagher, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** May 15, 2014

**ATTORNEYS FOR APPELLANT**

Joseph Medici
Jay Milano
James Pasch
Milano Pasch Medici
2639 Wooster Road
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

**For Robert Frey**

Robert J. Foulds
Dyson, Schmidlin & Foulds
5843 Mayfield Road
Mayfield Hts., Ohio 44124

Colin P. Moeller
Ankuda, Stadler Moeller & Tyminski
815 East Superior Avenue
Suite 1615
Cleveland, Ohio 44114

**For Emilie DiFranco and David Furry**

Markus E. Apelis
Thomas J. Cabral
Gallagher Sharp
Bulkley Building, 6th Floor
1501 Euclid Avenue
Cleveland, Ohio 44115

Christopher P. Finney
Finney, Stagnaro, Saba & Patterson
7373 Beechmont Avenue
Cincinnati, Ohio 45230

Curt C. Hartman
Law Firm of Curt C. Hartman
3749 Fox Point Court
Amelia, Ohio 45102

LARRY A. JONES, SR., P.J.:

**{¶1}** Plaintiff-appellant Michael Lograsso appeals the trial court's judgments granting the motion for judgment on the pleadings of defendants-appellees Emilie DiFranco, David Furry, and Robert Frey. For the reasons that follow, we affirm.

## I. Procedural History

**{¶2}** In December 2012, Lograsso filed a three-count complaint against defendants-appellees DiFranco, Furry, and Frey. Count 1 of the complaint alleged that the defendants defamed Lograsso; Count 2 alleged that the defendants repeatedly placed Lograsso in a public false light; and Count 3 sought punitive damages against the defendants for their alleged "conscious disregard for the well being, rights and safety" of Lograsso, which allegedly caused him to suffer "significant mental anguish, stress, humiliation and duress."

**{¶3}** DiFranco and Furry filed a joint answer and a joint motion for judgment on the pleadings, and Frey filed his own answer and motion for judgment on the pleadings. Lograsso filed responses to both motions for judgment on the pleadings and the defendants filed reply briefs. Lograsso filed motions to further respond, but they were denied. The trial court granted the defendants' motions for judgment on the pleadings.

## II. Facts

**{¶4}** At all relevant times, Lograsso, an attorney, was the law director for the city of South Euclid. Defendants DiFranco and Furry are residents of Fairview Park, and

maintain a website called "South Euclid Oversight." Defendant Frey is a South Euclid resident.

{¶5} In October 2011,[1] DiFranco filed a grievance with disciplinary counsel of the Ohio Supreme Court seeking review to "determine if Mr. Lograsso should continue to practice law in the state of Ohio." DiFranco listed the following general "facts of the grievance": "possible violations of Ohio Rules of Professional Conduct: 8.4. Law director: city of South Euclid, Ohio." More specifically, DiFranco stated that Lograsso had not filed returns for or paid certain taxes, he engaged in "multiple instances of misrepresentation," and he did not properly fulfill his duties as law director.

{¶6} The defendants and Lograsso were present at an October 22, 2012 South Euclid city council meeting. During the meeting, Frey addressed council about a proposed charter amendment that would allow city council members to approve the mayor's appointment of law director. According to Lograsso, Frey also questioned council about Lograsso's position as law director and stated that Lograsso's "resume was not adequate" for the position; Frey denied this.

DiFranco and Furry videotaped the meeting, including Frey's remarks and Lograsso's response to them, and subsequently posted the video on their "South Euclid Oversight" website and on the video sharing website YouTube.

{¶7} The defendants and Lograsso were also present for a November 12, 2012

---

[1]The complaint alleges that the grievance was filed in October 2012, but the exhibit attached to DiFranco and Furry's answer shows that it was filed on October 12, 2011.

council meeting, and Frey again addressed the council. According to Lograsso, Frey stated that the city needed to stop hiring people with "questionable financial histories," and stated that Lograsso had "several such financial irregularities." Lograsso further alleged that Frey stated that Lograsso had become law director because of political cronyism, and inferred that Lograsso had committed fraud. According to Lograsso, Frey "waived a packet of documents in the air proclaiming that he had documentation proving all of the accusations he made against Mr. Lograsso at the October 2012 City Council meeting." Furry again videotaped the meeting, and he and DiFranco posted it on their "South Euclid Oversight" website and on YouTube.

{¶8} Lograsso's sole assignment of error reads: "The trial court erred in granting the motions for judgment filed by the defendants/appellees."

### III. Law and Analysis

{¶9} Motions for judgment on the pleadings are governed by Civ.R. 12(C), which states that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Civ.R. 12(C) motions are specifically for resolving questions of law. *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 569, 664 N.E.2d 931 (1996). In ruling on a Civ.R. 12(C) motion, the court is permitted to consider both the complaint and answer. *Id.* A court must construe as true all of the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party. *Whaley v. Franklin Cty. Bd. of Commrs.*, 92 Ohio St.3d 574, 581, 752 N.E.2d 267 (2001), citing *Peterson v.*

*Teodosio*, 34 Ohio St.2d 161, 165-166, 297 N.E.2d 113 (1973).

{¶10} Dismissal is appropriate where a court finds beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. *Pontious* at 570.   Our review of the appropriateness of judgment on the pleadings is de novo.   *Thornton v. Cleveland*, 176 Ohio App.3d 122, 2008-Ohio-1709, 890 N.E.2d 353, ¶3 (8th Dist.).

**Defamation**

{¶11} In *Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051, ¶ 58-61, the Ohio Supreme Court, citing the Tennessee Supreme Court's decision in *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640 (Tenn.2001), recognized defamation and false-light invasion of privacy as two separate and distinct causes of action.

{¶12} Defamation occurs when a publication contains a false statement "'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.'"   *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, ¶ 9, quoting *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 7, 651 N.E.2d 1283 (1995).

{¶13} Thus, to establish a claim for defamation, a plaintiff must show: (1) a false statement of fact was made about the plaintiff, (2) the statement was defamatory, (3) the

statement was published, (4) the plaintiff suffered injury as a proximate result of the publication, and (5) the defendant acted with the requisite degree of fault in publishing the statement. *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832, ¶ 77, citing *Pollock v. Rashid*, 117 Ohio App.3d 361, 368, 690 N.E.2d 903 (1st Dist.1996); *see also Lucas v. Perciak*, 8th Dist. Cuyahoga No. 96962, 2012-Ohio-88, ¶ 12, citing *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Servs., Inc.*, 81 Ohio App.3d 591, 601, 611 N.E.2d 955 (9th Dist.1992).

**{¶14}** Further, in *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L. Ed.2d 686 (1964), the United States Supreme Court held that a higher standard — actual malice — applies to actions brought by public officials against critics of their official conduct. *Id.* at 283. Actual malice prohibits a public official from recovering any damages for a defamatory falsehood unless he proves that the communication was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 280.

**{¶15}** To qualify as a public official, the person "must have, or appear to have, substantial responsibility or control over public affairs, and his position must have such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees * * *." *Rosenblatt v. Baer*, 383 U.S. 75, 86, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966). We find that in his role as law director, Lograsso qualified as a public official. Under R.C. 705.11, a law director is

charged as follows:

> The village solicitor or city director of law shall act as the legal advisor to and attorney for the municipal corporation, and for all officers of the municipal corporation in matters relating to their official duties. He shall prepare all contracts, bonds, and other instruments in writing in which the municipal corporation is concerned, and shall indorse on each his approval of the form and the correctness thereof. No contract with the municipal corporation shall take effect until the approval of the village solicitor or city director of law is indorsed thereon. He or his assistants shall be the prosecutor in any police or municipal court, and shall perform such other duties and have such assistants and clerks as are required or provided.

{¶16} Given the authority of a law director, he has "substantial responsibility or control over public affairs, and his position must have such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it * * *." *Rosenblatt* at *id.* Thus, for the purposes of this action Lograsso was a public official and, therefore, had to demonstrate that the defendants acted with actual malice.

**False-Light Invasion of Privacy**

{¶17} Under the tort of false-light invasion of privacy, one who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (1) the false light in which the other was placed would be highly offensive to a reasonable person, and (2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. *Welling*, 113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051, at syllabus.

**Analysis**

{¶18} There are three actions on the part of the defendants that we need to examine. The first relates to defendant DiFranco and her filing a grievance against Lograsso. The second relates to defendant Frey and his comments at the council meeting. And the third relates to defendants DiFranco and Furry and their posting videos of the council meetings on the internet.

**Filing a Grievance**

{¶19} In *Hecht v. Levin*, 66 Ohio St.3d 458, 613 N.E. 585 (1993), the Ohio Supreme Court held that a statement made in a "judicial proceeding enjoys an absolute privilege against a defamation action as long as the allegedly defamatory statement is reasonably related to the proceeding in which it appears. *Id.* at 460, citing *Surace v. Wuliger*, 25 Ohio St.3d 229, 465 N.E.2d 939 (1986), syllabus.

{¶20} Because it is "'now well established that * * * all matters relating to the discipline and reinstatement of attorneys at law are inherently judicial in nature and are exclusively under the control of the judicial branch of government,'" the court held that the filing of a grievance is a judicial proceeding. *Hect* at 461, 462, quoting *In re Nevius*, 174 Ohio St. 560, 562, 191 N.E.2d 166 (1963).

{¶21} The facts as stated in the grievance DiFranco filed related to her request for review to "determine if Mr. Lograsso should continue to practice law in the state of Ohio." Thus, DiFranco was entitled to an absolute privilege against a defamation suit by Lograsso based on the filing of the grievance.

{¶22} In order to succeed under either defamation or false-light invasion of privacy a plaintiff must demonstrate that the subject matter was publicized. Gov.Bar.R. V., which governs grievances provides that "all proceedings and documents relating to review and investigation of grievances * * * shall be private." Indeed, the following appears immediately above DiFranco's signature on the grievance: "The Rules of the Supreme Court of Ohio require that investigations be confidential. Please keep confidential the fact that you are submitting this grievance. The party you are filing your grievance against will receive notice of your grievance and may receive a copy of your grievance and be asked to respond to your allegations."

{¶23} Lograsso alleged in his complaint that in her "packet" to disciplinary counsel, DiFranco "cited several corporations that had delinquent taxes and claimed that Mr. Lograsso had an ownership interest in the companies." Complaint at ¶ 9. Lograsso further alleged that at the October 22, 2012 council meeting, defendant Frey "produced several documents that he referenced during his address * * * [and] stated that the papers showed that Mr. Lograsso was an incorporator and investor in several Ohio corporations that were delinquent in paying taxes." *Id.* at ¶ 16. According to Lograsso, the corporations Frey referenced "were the same corporations noted in Defendant DiFranco's Disciplinary Counsel packet." *Id.*

{¶24} These statements appear to allege that DiFranco did not keep her grievance confidential. The "packet" Lograsso referred to was not attached to the complaint. But DiFranco attached the grievance to her answer. The grievance did not list any

corporations. Rather, in regard to the tax issue, DiFranco stated the following: "State of Ohio Department of Taxation — Judgment liens for non[-]payment of taxes"; "Failure to file necessary corporate franchise tax reports or pay any such taxes within the time prescribed by law"; and "Many kinds of illegal conduct [that] reflect adversely on fitness to practice law, such as * * * the offense of willful failure to file an income tax return."

{¶25} Thus, the evidence does not support Lograsso's purported claim that DiFranco failed to keep the grievance confidential, or in other words, that she publicized it. Moreover, the statements DiFranco made in her grievance were related to the proceeding. That is, they were made for the purpose of her request that the Supreme Court of Ohio investigate Lograsso's fitness to practice law. Accordingly, DiFranco was entitled to an absolute privilege against Lograsso's claims.

{¶26} Thus, in light of the above, no defamation or false-lights invasion of privacy cause of action existed against DiFranco for filing a grievance against Lograsso.

**Frey's Comments at Council Meeting**

{¶27} Lograsso's complaint alleged the following against Frey relative to the October 22, 2012 council meeting:

13. During the public meeting, Defendant Frey addressed the Council, the Mayor, other department heads and members of the general public.

14. During his remarks, Defendant Frey referenced a proposed charter amendment to the City's Charter that would allow City Council members to approve the Mayor's appointment of the Director of Law.

15. During his statement, Defendant Frey questioned Councilman Ed Icove about why he did not address issues regarding Plaintiff Michael Lograsso's position as Law Director. Defendant Frey also stated that Mr. Lograsso's

resume was not adequate for the position of Law Director.

16. At the meeting, Defendant Frey produced several documents that he referenced during his address. Defendant Frey stated that the papers showed that Mr. Lograsso was an incorporator and investor in several Ohio corporations that were delinquent in paying taxes. The corporations referenced were the same corporations noted in Defendant DiFranco's Disciplinary Counsel packet.

17. Defendant Frey publicly inferred that it was Mr. Lograsso's responsibility to pay the delinquent taxes and that it was Mr. Lograsso's fault that the taxes had not been paid.

**{¶28}** The complaint further alleged the following relative to Frey in regard to the

November 12, 2012 city council meeting:

23. Again Defendant Frey addressed Council and members of the public and again he made false and harmful comments towards Mr. Lograsso.

24. During his address, Defendant Frey specifically stated that the City Council needed to adopt laws prohibiting the City from employing persons with "questionable financial histories." Defendant Frey specifically stated that Mr. Lograsso has several such financial irregularities.

25. At the meeting, Defendant Frey insinuated that Mr. Lograsso only became the Law Director because of political cronyism.

26. * * * In relation to [proposed] legislation, Defendant Frey stated the City Council needs to review financial issues and fraud when reviewing someone in [the law director] position, clearly and falsely inferring that Mr. Lograsso had committed fraud.

27. Defendant Frey additionally waived a packet of documents in the air proclaiming that he had documentation proving all of the accusations he made against Mr. Lograsso at the October 2012 City Council meeting.

**{¶29}** Frey contends that his statements made at the council meetings were merely

his opinions, which were constitutionally protected.

**{¶30}** The expression of an opinion is generally immune from liability under the

Ohio Constitution and United States Constitution. *Vail v. The Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 280, 649 N.E.2d 182 (1995); *see also Wampler v. Higgins*, 93 Ohio St.3d 111, 113, 752 N.E.2d 962 (2001). This is because "there is no such thing as a false idea." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

{¶31} However, "[s]ociety has a pervasive and strong interest in preventing and redressing attacks upon reputation." *Rosenblatt v. Baer*, 383 U.S. 75, 86, 86 S.Ct. 669, 15 L. Ed. 2d 597 (1966). Therefore, what is required is a delicate balance between the constitutional protections afforded to the free expression of ideas and the protections afforded to an individual's reputation under defamation laws. *Fechko Excavating, Inc. v. Ohio Valley and Southern States LECET*, 9th Dist. Medina No. 09CA0006-M, 2009-Ohio-5155, ¶19, citing *Old Dominion Branch No. 496, Natl. Assn. of Letter Carriers v. Austin*, 418 U.S. 264, 270-72, 94 S.Ct. 2770, 41 L.Ed. 2d 745 (1974).

{¶32} Whether statements are fact versus opinion presents a question of law for a court to determine. *Scott v. The News-Herald*, 25 Ohio St.3d 243, 250, 496 N.E.2d 699 (1986). To answer this question, a court must determine whether a reasonable reader or hearer will perceive the statement as a fact or an opinion. *McKimm v. Ohio Elections Comm.*, 89 Ohio St.3d 139, 144, 729 N.E.2d 364 (2000). That is, "the law charges the author of an allegedly defamatory statement with the meaning that the reasonable reader attaches to [it,]" regardless of the author's subjective interpretation or intent. *Id.* at 145, citing 3 Restatement (Second) of Law (1977), Torts, Section 563 ("The meaning of a

communication is that which the recipient correctly, or mistakenly but reasonably, understands that it was intended to express.").

**{¶33}** In considering the fact versus opinion issue, Ohio courts apply a totality of the circumstances analysis and consider four factors in order to determine whether a statement is a fact or an opinion. *Scott* at *id.* Specifically, courts consider "the specific language at issue, whether the statement is verifiable, the general context of the statement, and the broader context in which the statement appeared." *Vail*, 72 Ohio St.3d 279 at 282, 649 N.E.2d 182.

**{¶34}** Although each factor must be considered, the weight afforded to each varies based upon the circumstances presented in each case. *Id.* Therefore, the analysis should be fluid and flexible rather than strict and mechanistic. *Id.* Indeed, consideration of the factors should be used more like a compass to provide guidance rather than a map to establish rigid, delineated boundaries. *Scott* at *id.*

**{¶35}** Upon review, we find that Frey's alleged statements that were specifically directed at Lograsso were his opinion. Those statements were that (1) Lograsso's "resume was not adequate for the position of Law Director"; (2) Lograsso has "several such financial irregularities"; and (3) Lograsso "only became the Law Director because of political croynism."

**{¶36}** Further, as with Lograsso's claims against Frey, we also decline to construe Lograsso's conclusory statements or inferences against Frey as setting forth a claim that would entitle Lograsso to relief. Those allegations were that Frey "publically inferred"

that it was Lograsso's fault that certain business taxes had not been paid, and that Frey "inferred" that Lograsso had committed fraud.

{¶37} In light of the above, the complaint did not set forth sufficient allegations that would have entitled Lograsso to relief for either defamation or false-light invasion of privacy.

**DiFranco and Furry's Posting of Meetings on Internet**

{¶38} Because we have found that the alleged comments made at the city council meetings could not sustain a cause of action for either defamation or false-light invasion of privacy, we also necessarily find that such causes of action cannot be sustained by Difranco and Furry's posting a video of the meetings on the internet.

{¶39} Thus, judgment on the pleadings based on the posting of the meetings on the internet was proper.

**Punitive Damages**

{¶40} Because we have found that Lograsso's complaint did not set forth claims sufficient to demonstrate actual malice on the part of appellees, his punitive damages claim must also fail. *See Convention Center Inn, Ltd. v. Dow Chem. Co.*, 19 Ohio Misc.2d 15, 17-18, 484 N.E.2d 15 (C.P.1984).

{¶41} In light of the above, the trial court properly granted the appellees' motion for judgment on the pleadings. Lograsso's sole assignment of error is, therefore, overruled.

{¶42} Judgment affirmed.

It is ordered that appellant recover of appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
MELODY J. STEWART, J., CONCUR