**Joe H. VAUGHAN,
Plaintiff-Respondent,**

v.

**TAFT BROADCASTING COMPANY,
Defendant-Appellant.**

**No. 67424.**

Supreme Court of Missouri,
En Banc.

April 15, 1986.

John R. Cleary, Jeffrey D. Fridkin, Kansas City, for defendant-appellant.

G. Stephen Long, Thomas J. Whittaker, William E. Quirk, Kansas City, for plaintiff-respondent.

HIGGINS, Chief Justice.

Plaintiff, Joe Vaughan, sued Taft Broadcasting Company, owner of WDAF radio station, alleging violation of the service letter statute, section 290.140, RSMo 1978. The jury awarded plaintiff $1.00 in actual damages and $173,670.83 in punitive damages; the Court of Appeals, Western District, affirmed. This Court transferred the case to determine whether plaintiff can recover actual and punitive damages under the service letter statute. Judgment for actual damages affirmed; judgment for punitive damages reversed.

Appellant contends: (1) the trial court erred in submitting a punitive damages instruction because section 290.140(2), RSMo Cum.Supp.1982, denies recovery for punitive damages; (2) the trial court erred in submitting a punitive damages instruction because there was not substantial evidence of malice; (3) the verdict for punitive damages was excessive and the result of bias and prejudice; (4) the jury verdict for punitive damages was improper because it resulted from an agreement to be bound by a quotient verdict; (5) the trial court erred in admitting a letter into evidence because it was prejudicial; (6) the trial court erred in denying defendant's motion for a directed verdict because there was insufficient evidence that the service letter did not correctly state the true cause of plaintiff's termination; and (7) the trial court erred in allowing defendant to argue as substantive evidence in closing argument deposition testimony used to refresh recollection.

Plaintiff was first employed by defendant in the summer of 1976 as a part-time employee filling in for various employees. Plaintiff was doing on-air broadcasting and

had other duties connected with the radio station. During this time, plaintiff received positive comments from management regarding his performance.

In May of 1978, plaintiff was offered a full-time position with WDAF. Plaintiff had been eager to become full time and immediately accepted the offer. Plaintiff's manager, Charles Gray, told him to keep quiet about becoming full time because the next person hired at WDAF needed to be black in order to meet EEOC requirements. In order to meet EEOC requirements, Gray prepared a recruitment source log detailing the twelve people he had interviewed for the position, even though the job had been filled. On June 16, 1978, Gray issued a memorandum stating, "After interviewing many applicants for the job, it became quite obvious that the best and most qualified candidate was right here in the building."

After becoming full time, plaintiff was not advised of any dissatisfaction with his performance. To the contrary, WDAF used plaintiff's coverage of a cave-in during construction of the Hyatt-Regency Hotel to promote its radio station. In addition, WDAF filmed a television commercial touting its news staff, including plaintiff.

Defendant's FCC license was scheduled for renewal in 1980; its renewal application was to be filed by October 1979. Defendant understood that the FCC could use the station's EEO hiring practices to deny the license renewal and that hiring a black would help the station meet EEOC guidelines.

In November 1978, the Missouri Commission on Human Rights began an investigation into hiring practices at Kansas City radio and television stations. The Commission wished to meet with defendant's management; however, defendant refused to meet with the Commission until June 1979.[1]

In February 1979, Ted Griffin, Executive Vice President of the Missouri Broadcasters Association (MBA), circulated a letter to all Kansas City MBA stations, including WDAF. The letter advised the stations that the Human Rights Commission planned to evaluate employment practices and that although he had tried to convince the Commission there was no problem at the Kansas City stations, the Commission refused to back down from its investigation. Griffin also stated he thought the broadcasters would have a problem at license renewal time.

On March 28, 1979, Gray told plaintiff that he was no longer employed at WDAF because Gray did not like his "air sound." Gray and David Martin, the general manager of WDAF, testified they decided to fire plaintiff in November of 1978 because he was performing inadequately. In December of 1978, Gray began recruiting Cecil Hickman, a black newsman with radio station KCMO. The effort to recruit Hickman failed initially; but after defendant increased the salary offer and guaranteed Hickman a raise in six months, he accepted the position. No other person on the staff had ever been offered a guaranteed pay increase. Gray documented his recruitment efforts in a memorandum to offer proof to the government that WDAF was trying to hire a black reporter.

Following his termination, plaintiff requested Gray to write a letter stating his employment to show a potential future employer. After an inadequate response by Gray and a second request by plaintiff, Gray wrote to plaintiff stating he would prefer to respond to specific inquiries from prospective employers. On June 4, plaintiff again wrote Gray and Martin requesting a letter setting forth the three areas covered by the service letter statute. On June 19, 1979, Gray wrote a letter stating that plaintiff had been employed by WDAF from June 19, 1978, to March 28, 1979.[2]

---

1. The meeting took place several months after plaintiff had been replaced by a black newscaster.

2. This period did not include plaintiff's part-time employment.

The letter listed plaintiff's duties and stated that he had been terminated because he had not adequately responded to emergency situations and that defendant was dissatisfied with plaintiff's performance of air duties.

Plaintiff filed his action in April of 1980 alleging defendant had not stated the true cause for his termination in the service letter. Judgment in his favor was entered in November of 1983.

Appellant asserts that the trial court erred in submitting an instruction on punitive damages because the service letter statute specifically denies recovery of punitive damages in plaintiff's situation.

The service letter statute was originally enacted in 1905 to remedy the evil of blacklisting of employees by railways and other corporations. *Cheek v. Prudential Insurance Co.*, 192 S.W. 387 (Mo.1917). Although the statute itself did not specifically create a private cause of action in the employee, the Court in *Cheek* reasoned that since the duty imposed by the statute was for the benefit of a class of individuals as well as the public good, a right of action would be given to any member of the class damaged by a breach of that duty. *Id.* at 389. Punitive damages could be awarded although the recovery of actual damages be nominal. *State ex rel. St. Joseph Belt Railway Co. v. Shain*, 341 Mo. 733, 108 S.W.2d 351, 356 (1937).

In 1982, section 290.140 was amended and reads as follows:

**290.140. Letter of dismissal, when—failure to issue, damages—punitive damages, limitations.**—1. Whenever any employee of any corporation doing business in this state and which employs seven or more employees, who shall have been in the service of said corporation for a period of at least ninety days, shall be discharged or voluntarily quit the service of such corporation and who thereafter within a reasonable period of time, but not later than one year following the date the employee was discharged or voluntarily quit, requests in writing by certified mail to the superintendent, manag-

er or registered agent of said corporation, with specific reference to the statute, it shall be the duty of the superintendent or manager of said corporation to issue to such employee, within forty-five days after the receipt of such request, a letter, duly signed by such superintendent or manager, setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee was discharged or voluntarily quit such service.

2. Any corporation which violates the provisions of subsection 1 of this section shall be liable for compensatory but not punitive damages but in the event that the evidence establishes that the employer did not issue the requested letter, said employer may be liable for nominal and punitive damages; *but no award of punitive damages under this section shall be based upon the content of any such letter.*

(Emphasis added.)

■ Appellant contends the 1982 statute applies to this case and prevents an award of punitive damages. Respondent argues the 1982 statute does not apply because his cause of action accrued and his case was filed prior to the effective date, August 13, 1982, of the amended service letter statute.

Appellant contends that section 1.160, RSMo 1978, governs this issue because section 290.140 has been construed to be a penal statute. *See Barrows v. Riss & Co.*, 238 Mo.App. 334, 179 S.W.2d 473 (1944); *Walker v. St. Joseph Belt Railway Co.*, 102 S.W.2d 718 (Mo.App.1937). Section 1.160 provides:

**1.160. Effect of repeal of penal statute.**—No offense committed and no fine, penalty or forfeiture incurred, or prosecution commenced or pending previous to or at the time when any statutory provision is repealed or amended, shall be affected by the repeal or amendment, but the trial and punishment of all such offenses, and the recovery of the fines, penalties or forfeitures shall be had, in

all respects, as if the provision had not been repealed or amended, except (1) that all such proceedings shall be conducted according to existing laws; and (2) that *if the penalty or punishment for any offense is reduced or lessened by any alteration of the law creating the offense, the penalty or punishment shall be assessed according to the amendatory law.*

(Emphasis added.)

Appellant submits the legislature knew, when it amended the service letter statute, that by reducing a penalty by statutory amendment, the reduced penalty would, by virtue of section 1.160, be applied to all pending actions brought under the statute. *State ex rel. Cole v. Nigro*, 471 S.W.2d 933 (Mo. banc 1971). Section 1.160 governs the repeal or amendment of statutes relating to criminal offenses, not civil actions; therefore, section 1.160 has no application to an action brought under Missouri's service letter statute. *Crompton v. Curtis-Toledo, Inc.*, 661 S.W.2d 645 (Mo.App.1983).

Appellant argues alternatively that the amended statute affects a remedy only and does not impair a substantive right; therefore, it should be applied retrospectively to plaintiff's case.

Under article I, section 13 of the Missouri Constitution, no statute retrospective in its operation can be enacted. *Scheidegger v. Greene*, 451 S.W.2d 135 (Mo.1970). This provision does not apply, however, to a statute dealing only with procedure or remedies. *Id.* at 137. "No person may claim a vested right in any particular mode of procedure for the enforcement or defense of his rights, and where a new statute deals only with procedure it applies to all actions including those pending or filed in the future." *Id.* Nor does the federal constitution prevent a remedial or procedural provision from being applied retroactively because "although a vested cause of action is property ..., the [plaintiff] has no property, in the constitutional sense, in any particular form of remedy; all that he is guaranteed by the Fourteenth Amendment is the preservation of his substantial right to re-

dress by some effective procedure." *Gibbes v. Zimmerman*, 290 U.S. 326, 332, 54 S.Ct. 140, 142, 78 L.Ed. 342 (1933).

The issue, therefore, is whether the plaintiff had a vested right to punitive damages at the time the amended statute became effective.

This Court finds that under Missouri law, punitive damages are remedial and a plaintiff has no vested right to such damages prior to the entry of judgment. *Arie v. Intertherm, Inc.*, 648 S.W.2d 142, 159 (Mo.App.1983). Punitive damages are never allowable as a matter of right and their award lies wholly within the discretion of the trier of fact. *DeBow v. Higgins*, 425 S.W.2d 135 (Mo.1968). The purpose of punitive damages is to inflict punishment and to serve as an example and deterrent to similar conduct. *Polk v. Missouri-Kansas-Texas Railroad Co.*, 351 Mo. 865, 174 S.W.2d 176, 180 (1943); *Arie*, 648 S.W.2d at 159. The reasoning for finding punitive damages remedial and applying the statute retroactively was stated in *Smith v. Hill*, 12 Ill.2d 588, 147 N.E.2d 321, 327 (1958):

The Act in barring punitive damages merely establishes a "public policy" that in the interest of society in the particular class of cases such damages should not be awarded. Such damages being allowed in the interest of society, and not to recompense solely the victim, to deny them cannot be said to deny any constitutional right or to encroach upon any judicial function, or to violate any constitutional guaranty of separation of powers.

This Court concludes that the trial court erred in submitting a punitive damages instruction to the jury; plaintiff cannot recover punitive damages because he had no vested right to such damages at the time the 1982 statute became effective. *See Louisville & N.R. Co. v. Street*, 164 Ala. 155, 51 So. 306 (1909); *American Bank & Trust Co. v. Community Hospital*, 36 Cal.3d 359, 204 Cal.Rptr. 671, 683 P.2d 670 (1984); *Teasley v. Mathis*, 243 Ga. 561, 255 S.E.2d 57 (1979); *Smith v. Hill*, 12, Ill.2d 588, 147 N.E.2d 321 (Ill.1958); *Jefferson Disposal Co., Inc. v. Parish of Jefferson,*

603 F.Supp. 1125 (E.D.La.1985); *Convention Center Inn, Ltd. v. Dow Chemical Co.*, 19 Ohio Misc.2d 15, 19 Ohio B.R. 422, 484 N.E.2d 764 (1984). *See also Jasperson v. Purolator Courier Corp.*, 765 F.2d 736 (8th Circ.1985).

■ Respondent relies upon *State ex rel. Deering v. Corcoran*, 652 S.W.2d 228 (Mo. App.1983), where the court held that the 1982 amendment to the service letter statute does not preclude punitive damages in a suit commenced before the effective date of the amendment but in which no judgment has been entered. *Id.* at 230. The court in *Deering* reasoned that if the legislature had intended retrospective application, it would have so specifically provided. *Id.* at 229. A statutory provision that is remedial or procedural, however, must be applied retrospectively unless the legislature expressly states otherwise. *State ex rel. LeNeve v. Moore*, 408 S.W.2d 47, 49 (Mo. banc 1966). In addition, the court in *Deering* concluded that the 1982 statute should not be applied retrospectively because sections 1.170 and 1.180, RSMo 1978, prevent pending actions from being affected by a repealing statute. *Deering*, 652 S.W.2d at 229. The conclusion reached in *Deering* is erroneous because sections 1.170 and 1.180 apply only if plaintiff has a vested right. *Arie*, 648 S.W.2d at 159. Therefore, the holding in *Deering* and any cases relying upon *Deering* should no longer be followed.

■ Appellant contends that the trial court erred in admitting into evidence the letter from Ted Griffin advising WDAF of his attempt to dissuade the Human Rights Commission from investigating the Kansas City stations. If proffered evidence is admissible for any purpose, it may not be excluded. *Martin v. Mercantile Trust Co.*, 293 S.W.2d 319 (Mo.1956). The letter from Griffin was properly admitted to show defendant's notice of the pending investigation by the Human Rights Commission. Appellant argues that the letter contained prejudicial comments made by Griffin.[3] The trial court did not err in admitting this letter because the statements urged as inflammatory are relevant to the notice defendant received of the seriousness of the investigation and its importance to the licensing process.

■ Appellant contends there was insufficient evidence to support a finding by the jury that the service letter did not correctly state the true cause of plaintiff's termination. The evidence offered was entirely circumstantial; however, the existence of only circumstantial evidence on a material issue is no bar to recovery of and by itself. *McCarthy v. Wulff*, 452 S.W.2d 164, 168 (Mo.1970). The circumstantial evidence must establish the desired inference with such certainty as to cause it to be the more reasonable and probable of the conclusions to be drawn. *Jordan v. Robert Half Personnel Agencies*, 615 S.W.2d 574, 587 (Mo. App.1981). In reviewing the trial court's decision, the evidence must be considered favorably to plaintiff, and defendant's evidence must be disregarded unless it tends to support the submission. *Wright v. Fox-Stanley Photo Products, Inc.*, 639 S.W.2d 407, 408 (Mo.App.1982).

■ It was plaintiff's position that he was terminated because WDAF felt the need to hire a black in order to satisfy the Commission's investigation and to present a favorable view of its hiring practices for use in its license renewal application. A review of the facts shows that plaintiff made a submissible case and that the evidence was sufficient to allow the jury to infer beyond speculation that the true reason plaintiff was terminated was to make it possible to hire a black and not because of plaintiff's inadequate job performance.

Appellant asserts the trial court erred in allowing plaintiff's counsel to use David Martin's deposition testimony in closing argument as substantive evidence when the deposition was used only to refresh Mar-

---

**3.** In particular, Griffin stated: "I think we have a problem that can be a thorny one at this renewal time, unless we can stall long enough."

**662**

tin's recollection. Defendant made no objection at the time of argument and the claim that the argument was improperly permitted is foreclosed from consideration. *Mueller v. Storbakken*, 583 S.W.2d 179, 186 (Mo. banc 1979).

Because of this Court's determination that the 1982 service letter statute applies in this case, there is no need to consider appellant's remaining contentions regarding the punitive damages.

Accordingly, this Court affirms the trial court's judgment awarding plaintiff $1.00 nominal damages and reverses and vacates the award of punitive damages.

All concur.