**NATIONAL BRIDGE COMPANY,
INC., Respondent,**

v.

**AYLWARD PRODUCTS COMPANY,
INC., Appellant.**

**No. 44454.**

Missouri Court of Appeals,
Western District.

March 10, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
April 28, 1992.

Application to Transfer Denied
June 2, 1992.

Rodger Walsh, Independence, for appellant.

Dennis Muller, Kansas City, for respondent.

Before BERREY, P.J., and ULRICH and HANNA, JJ.

HANNA, Judge.

This is an action on account brought by National Bridge Company, Inc. (National) against Aylward Products Company, Inc. (Aylward) for $15,386.77 and Aylward counterclaimed for $4,032.00. The jury returned a verdict for National in the amount of $11,229.06 plus interest. To better understand the issues on appeal, we will attempt to simplify a description of the events leading up to trial based upon the complicated facts presented by the parties.

The parties are in the business of supplying bridge parts and this dispute evolves around parts supplied for the construction of a bridge in Kansas. Aylward originally contracted with Whitewing Construction Company (Whitewing) to supply construction materials in order for Whitewing to build a bridge for the Kansas Department of Transportation. Whitewing ordered 24,-411 pounds of material from Aylward at $2.24 per pound for a total contract price of $54,680.64. Based on that agreement, Aylward contacted National in order to procure the materials needed to fill the Whitewing purchase order. In December of 1988, National quoted Aylward a price of $1.78 per pound for the 24,411 pounds requested, for a total sale price of $43,451.58. In essence, Aylward was the middle man in this arrangement and was in a position to make around $11,000.00 on the transaction.

Aylward paid National the amount it thought National was due under the agreement and National brought this action to recover the amount it alleged was still owed. The jury awarded National $11,229.06 plus interest, a figure which was to represent the balance remaining due from Aylward. This appeal was brought because Aylward claims the jury miscalculated the award. We agree that the jury's award was erroneous because they began their calculation with the amount of the Whitewing bid to Aylward, instead of the amount due under National's agreement with Aylward. The evidence does not support the jury's calculation and the result was a windfall for National.

The dispute originated when National informed Aylward that it could not supply certain "stainless steel cradles" in time to satisfy the Whitewing contract.[1] That forced Aylward to seek out Hart Manufacturing (Hart) to supply the needed cradles and Hart quoted a total price of $14,448.00. National agreed to absorb this price and it was to supply the remaining materials. (National had calculated the cradles in its original bid at $12,000.00).

Later, Hart raised its price to over $22,-000.00 and Aylward was forced to seek out another supplier. Aylward eventually found Best Tool & Manufacturing Company (Best) who quoted a price of $18,480.00. It was agreed that Aylward would place the order with Best, but National would only be responsible for $14,448.00 of the cost (the amount of the original Hart bid).

After Aylward found Best, the agreement was that Aylward would receive $54,-680.64 from Whitewing and would pay Best $18,480.00 out of that amount.[2] That would leave Aylward with $36,200.64 to

---

1. As an alternate solution, somewhere in the middle of this tangled mess, National suggested to Aylward that it would draft and tender new plans to the Kansas Department of Transportation, offering a substitute material (not stainless steel) for the cradles which could be produced in a shorter time. Pursuant to this suggestion, Aylward agreed to assign the entire Whitewing contract to National, with National to pay Aylward a 7% commission on the deal. The Kansas Department of Transportation rejected National's proposal and assignment of the Whitewing contract was never consummated.

2. It is not clear from the record whether the cradles were to be sent to National for assembly or directly to Whitewing, but the outcome is the same either way.

pay for the remaining materials which National was to supply.

After delivery, Aylward told National to bill Aylward $1.81 per pound instead of the earlier prices quoted. There were conflicting reasons given at trial as to why Aylward agreed to this higher price. In any event, the final invoice dated June 16, 1989, was for 24,525 pounds (this poundage figure apparently came from the Kansas Department of Transportation's verification which was sent to National) at $1.81 per pound and a total price of $44,390.25. Testimony from both parties was that this price and poundage included the cradles. As stated earlier, National had agreed to assume the original amount of the Hart bid ($14,448.00) for the cradles and as a compromise Aylward agreed to assume the additional costs it had to pay Best. Aylward paid Best the entire $18,480.00 for the cradles. Therefore, $14,448.00 should have been deducted from the final invoice as indicated in the verdict director instruction. Simply put, National did not produce the 24,525 pounds of material it listed on its final invoice. Approximately 2,250 pounds of the material represented the cradles which were produced by Best. Therefore, the money due National under the agreement should have been the amount shown

on its final invoice *minus* the $14,448.00 it agreed to assume.

The jury erred in calculating the balance due National. The error in calculation arose from the verdict director instruction. That instruction stated:

"Your verdict must be for plaintiff if you believe:

First, plaintiff and defendant entered into an agreement whereby plaintiff National agreed to fill defendant Aylward's purchase order from Whitewing, except for the fabrication and material for the cradles, and defendant Aylward agreed to pay plaintiff the amount of defendant *Aylward's purchase order* minus the original amount of the Hart bid for fabrication and supply of the cradles ..." [Emphasis ours].

The jury erroneously interpreted the latter defendant "Aylward's purchase order" to mean the purchase order from Whitewing to Aylward and not the purchase order from Aylward to National.

The Aylward/Whitewing purchase order had a figure of $54,680.64. It is clear from our calculations that the jury began with that figure as a starting point in calculating the damage award. The result was as follows:

| | | |
|---|---|---|
| Aylward/Whitewing Purchase Order | | $54,680.64 |
| Minus the original Hart bid | (14,448.00) | |
| Total Owed National from Aylward | | $40,232.64 |
| Total Aylward paid to National | $29,003.58 | |
| Balance due (jury verdict) | | $11,229.06 |

There is no evidence to support using the Aylward/Whitewing figure as a starting point in the calculation. The correct calculation with which to start was the $44,-390.25 figure that appears on the June 16, 1989 invoice and would have left a balance due of $938.67. That calculation should have been as follows:

| | |
|---|---|
| The National/Aylward invoice (24,525 lbs. at $1.81) | $44,390.25 |
| Minus the original Hart bid (14,448.00) | |
| Total Owed National from Aylward | $29,942.25 |
| Total Aylward paid to National $29,003.58 | |
| Balance due | $ 938.67 |

---

At trial, National claimed that on March 29, 1989, three months after their original bid, they were going on a "flat fee" instead of a poundage basis. There is no evidence to support that claim other than the testimony of National's vice president.[3] It is unconscionable to believe, as respondent suggests, that Aylward would agree to take the $54,680.64 contract, pay Best $18,480.00 for the cradles, and then pay National over $40,000.00 for the remaining material, since under that arrangement Aylward would automatically end up losing money on the deal.

The final invoice shows a figure consistent with the original offer made by National. There is insufficient evidence to show that any arrangement was agreed to by the parties other than a per pound calculation.[4] Once it was evident that National could not produce the cradles in a timely fashion, the price of those cradles had to be taken out of the equation and National's trial testimony agreed. The invoice erroneously included the cradles and should have been reduced accordingly.

 It is easy to see how the court and the jury became confused considering the calamity of facts as presented by the par-

ties. However, the error is easily rectified. An award that is merely disproportionate to the proof of damages, which results from an honest mistake by the jury in assessment of the evidence, may be remedied by an enforced remittitur and does not require a re-trial. *Groppel Co. v. U.S. Gypsum Co.*, 616 S.W.2d 49, 64 (Mo.App. 1981).

Based on the foregoing, the appellant's second point claiming the grossly excessive verdict is moot. That point is denied.

The third and final point claiming error in sustaining respondent's motion for directed verdict on appellant's counterclaim also fails. The amount claimed in appellant's counterclaim was $4,032.08. This figure represents the additional amount appellant had to pay Best once the Hart deal fell through. Appellant agreed to pay that extra amount in order to keep the deal with National alive. There was no error in denying the counterclaim and the point is denied accordingly.

The judgment is reversed and the case is remanded with instructions to modify the award in accordance with this opinion by

---

**3.** Every agreement between the parties indicated a per pound calculation. There is no evidence to support Respondent's claim that the contract was to be based on a "flat fee". The bid from Whitewing to Aylward was $2.24 a pound for a total price of $54,680.64. The original bid from National was $1.78 per pound for a total of $43,451.58. An acknowledgment dated March 20, 1989, from National to Aylward states that National would supply the material for a price of $1.65 per pound and a TOTAL EXTENDED PRICE of $40,278.15. The final

invoice sent to Aylward from National showed a charge of $1.81 a pound for a total of $44,390.25. Every relevant document in the record contains a price per pound, not a "flat fee". This "flat fee" concept offered by Respondent is not supported by the evidence.

**4.** The trial testimony revealed three possible prices: $1.65, 1.78 and 1.81 per lb. for the cost of product. There was no dispute that the last invoice had an agreed price of $1.81 per lb.

entering judgment in favor of the plaintiff and against the defendant in the amount of $938.67.

All concur.