**Velvet Sue DILDINE,
Plaintiff/Respondent,**

v.

**James FRICHTEL, Thomas Frichtel, and
Steve Frichtel, d/b/a Frichtel Brothers
Construction Company, and American
Family Mutual Insurance Company, Defendants/Appellants.**

No. 64761.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 20, 1994.

Rehearing Denied Jan. 25, 1995.

Crystal Y. Smith, Homire, Mueller & Bippen, St. Louis, for appellant.

Andrew H. Koor, O'Fallon, for respondent.

CRANE, Presiding Judge.

On March 13, 1988, just before midnight, plaintiff, Velvet Sue Dildine, walked across her boyfriend's front lawn to pick up his newspaper and tripped over that portion of a white PVC sewer cleanout pipe servicing the property which protruded above ground. She fell and broke her wrist. She filed a suit against her boyfriend's landlord, James Frichtel, Thomas Frichtel, and Steve Frichtel, d/b/a Frichtel Brothers Construction Company, for personal injuries and against landlord's insurer, American Family Mutual Insurance Company, for medical payments and vexatious refusal to pay. The jury found plaintiff's personal injury damages to be

$6,375 and assessed 67% of fault to landlord. The jury also found insurer liable for $605 in medical bills and $8,500 in attorney's fees. The trial court entered judgment in accord with the verdicts.

Both landlord and insurer appeal. We reverse the judgment against landlord for failure to make a submissible case. We reverse the damage judgment against insurer for $605 and remand with directions to enter judgment for plaintiff and against insurer in the amount of $145. We affirm the award of attorney's fees against insurer in the amount of $4,647.07 on condition of plaintiff's remittitur of $3,852.93. Otherwise, we reverse and remand for new trial on the amount of attorney's fees.

## LANDLORD'S APPEAL

On appeal landlord raises six points of error. We find its assertion that the trial court erred in failing to direct a verdict or enter judgment notwithstanding the verdict dispositive because plaintiff failed to make a submissible case of negligence.

A case is not to be submitted to the jury unless each and every fact essential to liability is predicated upon legal and substantial evidence. *Koszor v. Ferguson Reorganized S.D. R–2,* 849 S.W.2d 205, 207 (Mo. App.1993). "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of facts can reasonably decide a case." *Hurlock v. Park Lane Medical Ctr., Inc.,* 709 S.W.2d 872, 880 (Mo.App.1985). The questions of whether evidence in a case is substantial and whether the inferences drawn are reasonable are questions of law. *Id.*

In determining whether plaintiff has made a submissible case, we view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to her. *Eidson v. Reproductive Health Services,* 863 S.W.2d 621, 626 (Mo.App.1993). We will not overturn a jury verdict unless there is a complete absence of probative facts to support it. *Nishwitz v. Blosser,* 850 S.W.2d 119, 122 (Mo.App.1993); *Miller v. Gillespie,* 853 S.W.2d 342, 344 (Mo.App.1993). However, we do not supply missing evidence or give a plaintiff the benefit of unreasonable, speculative, or forced inferences. *Eidson,* 863 S.W.2d at 626. The evidence and inferences must establish every element and not leave any issue to speculation. *Id.*

Plaintiff is bound by the uncontradicted testimony of her own witnesses, including that elicited on cross-examination. *Hurlock,* 709 S.W.2d at 879. When a party calls a witness who comes within the adverse witness rule, the party is bound by that witness's testimony on direct examination if the testimony is uncontradicted or the only testimony on the subject; however, an adverse witness's testimony on cross-examination is not binding on the calling party. *Id.*

To prevail in a negligence action, a plaintiff must establish the existence of a duty on the part of the defendant to protect the plaintiff from injury, defendant's failure to perform that duty, and plaintiff's injury proximately caused thereby. *Poluski v. Richardson Transp.,* 877 S.W.2d 709, 713 (Mo.App.1994). Plaintiff submitted her case on the theory that landlord had retained possession and control of the front yard of her boyfriend's leased duplex unit. "[A] landlord is under a duty to exercise ordinary care to keep the portions of the premises which he retains in his control [in] a reasonably safe condition for the use intended and is liable for damages for personal injuries resulting from his failure to perform that duty." *Lemm v. Gould,* 425 S.W.2d 190, 194 (Mo.1968) (quoting *Peterson v. Brune,* 273 S.W.2d 278, 280 (Mo.1954)); *Nenninger v. Trustees of Oran Life Tabernacle Church,* 789 S.W.2d 530, 532 (Mo.App.1990). The foundation of the landlord's duty is based upon the landlord's retention of control. *Nenninger,* 789 S.W.2d at 532. There must be some substantial evidence from which the jury can infer that the tenant gave up and surrendered his right to exclusive possession and control and shared control with the landlord. *Lemm,* 425 S.W.2d at 195; *Nenninger,* 789 S.W.2d at 532. One method to prove retention of control is to show that landlord retained supervision over the premises for a limited purpose, such as making repairs or alterations, and the right to enter and make repairs on his own initiative. *Nenninger,*

789 S.W.2d at 532. Another method is to show that the portion of the premises involved was so constructed as to be used by, or subject to be used by, the landlord and another tenant or by two or more tenants. *Id.*

■ Plaintiff adduced the following evidence. Tenant leased the premises at 1333 Sunview Drive which was one unit of a duplex. A sidewalk across the front of the house connected the unit's front porch to its driveway. The unit's front yard consisted of a lawn between the sidewalk and the street. Tenant's newspaper was delivered to his lawn. His mailbox was where his driveway met the street. The lease provided that landlord was not to make any repairs except as set forth in the lease. The lease only obliged landlord to repair if the building was partially damaged by fire or the elements. Plaintiff testified that tenant was responsible for cutting the grass.

Plaintiff argues the following facts were substantial evidence of control: 1) that tenant in fact had not cut the grass; 2) that landlord and other persons had crossed the yard; and 3) that there was no fence or shrubbery dividing tenant's front yard from the front yard of the other complex. None of these facts constitute substantial evidence that the tenant had given up his right of exclusive possession and control of his front yard to landlord.

Tenant had only occupied the premises two weeks before the March 13 accident. Tenant's failure to cut the grass during the first two weeks in March is not substantial evidence that landlord retained control of the lawn. There was no evidence that landlord maintained the lawn during those two weeks.

Defendant James Frichtel testified that he had walked through the yard many times and had seen others do so, but he did not testify that this had occurred during tenant's tenancy. However, Frichtel specifically testified that he and others had been on the property *prior* to the tenancy to construct the premises and to maintain them. A submissible case is not made if it solely depends on evidence which equally supports two inconsistent and contradictory factual inferences as to ultimate and determinative facts because liability is then left in the realm of speculation, conjecture and surmise. *Hurlock,* 709 S.W.2d at 880. Accordingly, Frichtel's testimony is not substantial evidence that landlord had retained control of the yard or considered it to be a common area.

Likewise, the absence of a fence on the property line dividing the front yards of the two units is not substantial evidence that landlord retained control. First, James Frichtel, who was called as a witness by plaintiff, testified on direct examination that the property line dividing the front yards of the two units "was clearly defined" and could be visually established because the front building line of the unit was offset. Second, there was no evidence that the lack of such a fence was intended to allow the tenant of the other unit (if there was a tenant) to use tenant's front yard or was done so to allow landlord to retain control of the yard. There was no evidence that during tenant's tenancy another tenant or landlord used tenant's front yard.

In the absence of substantial evidence of retention of control, the trial court erred in denying landlord's motion for a directed verdict. The judgment against landlord is reversed.

### INSURER'S APPEAL

We next consider insurer's appeal. Insurer challenges both the award of damages in the amount of $605 and the award of attorney's fees in the amount of $8,500.

Plaintiff made a claim against insurer for payment of her medical bills. Originally, insurer denied coverage because it understood from plaintiff's statement to its field representative that she was a resident of the unit and was, therefore, excluded under the policy. Plaintiff's attorney advised insurer that plaintiff lived with her parents and had only stayed at the apartment that evening. Although it continued to deny liability, insurer agreed to honor plaintiff's medical expense claim. Insurer advised plaintiff that the policy covered up to $5,000 for medical expenses incurred and reported to insurer within one year from the date of the accident. Plaintiff sent medical bills to insurer in the amount of

$3,978.77. Insurer paid these bills and requested that any additional bills be sent.

On October 18, 1988 plaintiff sent insurer a bill for $145 for physical therapy. Insurer did not respond to this bill. On October 26, 1990, nineteen months after the accident, plaintiff sent insurer medical bills for physical therapy in the amount of $605, which included the $145 previously submitted. Insurer refused to pay this bill because it was submitted after the one year coverage period. Plaintiff then filed an action against insurer for medical expenses and damages for vexatious refusal to pay. Plaintiff specifically sought $605 for medical expenses, a statutory 20% penalty, and reasonable attorney's fees. The jury awarded her $605 in damages and $8,500 in attorney's fees, but did not award a penalty.

■ In its challenge to the damage award, insurer contends that the trial court erred in denying its Motion for Remittitur of $460 because there was insufficient evidence to support the award of $605. On appeal plaintiff concedes that $460 of the damages represented physical therapy bills incurred and submitted outside the one year coverage period. Insurer concedes that $145 of the physical therapy bills were incurred and submitted within the one year period. Because there is no factual question and the parties agree that damages are $145, we may reduce the judgment under Rule 84.14. *Schoor v. Wilson*, 731 S.W.2d 308, 312–13 (Mo.App. 1987). We reverse the damage judgment against insurer for medical expenses and remand to the trial court with directions to enter judgment in favor of plaintiff and against insurer for $145 in damages.

Insurer next challenges the attorney's fees award on several grounds. We find meritorious its claim that the trial court erred in denying its motion for remittitur of the attorney's fees award as excessive under the evidence.[1]

■ At trial plaintiff's attorney testified that as of September 15, 1992, which was nine months prior to the trial date, his firm had expended 36.83 hours on plaintiff's claim against insurer. Plaintiff contracted with her attorney to charge $125 per hour for services rendered on the claim against insurer. Plaintiff's attorney also testified that his total bill, including costs, was $4,647.07 as of September 15, 1992. He testified the charges were fair and reasonable. Plaintiff's attorney did not offer evidence of any further charges. The jury awarded $8,500 in attorney's fees.

■ Sections 375.296 RSMo (1986) and 375.420 RSMo (1986) provide for an award of reasonable attorney's fees for vexatious refusal to pay. Plaintiff has the burden to prove the reasonable value of her attorney's services. *Hester v. American Family Mut. Ins. Co.*, 733 S.W.2d 1, 3 (Mo.App.1987). Because the jury is not an expert on the value of legal services, plaintiff must present evidence to the jury upon which it can find the reasonable value of the attorney's services. *Howard Constr. Co. v. Teddy Woods Constr. Co.*, 817 S.W.2d 556, 564 (Mo.App.1991).

Insurer argues that the trial court erred in denying their motion for remittitur because the jury award of $8,500 for attorney's fees was excessive. Section 537.068 RSMo (Cum. Supp.1993) provides: "A court may enter a remittitur order if, after reviewing the evidence in support of the jury's verdict, the court finds the jury's verdict is excessive because the amount exceeds fair and reasonable compensation for plaintiff's injuries and damages." We review a trial court's denial of remittitur only for abuse of discretion. *Magnuson by Mabe v. Kelsey–Hayes Co.*, 844 S.W.2d 448, 457–58 (Mo.App.1992).

"A verdict which is not supported in amount by substantial evidence, but which is faulted only because it exceeds the maximum amount the evidence does authorize, is assumed to have resulted from some mistake which may be rectified by remittitur." *Jordan v. Robert Half Personnel Agencies*, 615

---

1. We have reviewed insurer's claim of plain error in the admission of the attorney's fee bill and insurer's claim that it was entitled to a new trial because the attorney's fees were so grossly excessive as to show bias, passion, and prejudice of the jury. Neither of these points provides a basis for this court to find reversible error. We deny these points without further discussion as an extended opinion would have no precedential value.

S.W.2d 574, 581 (Mo.App.1981); *see also National Bridge Co., Inc. v. Aylward Prods. Co., Inc.*, 829 S.W.2d 530, 533 (Mo.App.1992). Because plaintiff did not offer evidence of the value or amount of plaintiff's attorney's services after September 15, 1992 or of fees in excess of the $4,647.07 to which he testified, the trial court abused its discretion in not granting remittitur.

The judgment against James Frichtel, Steve Fritchel and Thomas Frichtel is reversed. The judgment against American Family for medical expenses is reversed and remanded with directions to enter judgment in favor of plaintiff and against American Family in the amount of $145. If plaintiff will, within 15 days of the last ruling on all post-opinion motions or the last date from which a post-opinion motion could have been filed, whichever date is later, enter a remittitur in this court in the sum of $3,852.93, the judgment against American Family for attorney's fees will be affirmed in the amount of $4,647.07 as of the date of the entry of the judgment in the lower court, otherwise the judgment will be reversed and the cause remanded for a new trial on the issue of reasonable attorney's fees.

CRANDALL and DOWD, JJ., concur.