Gilbert **RESNIK**, Plaintiff/Appellant,

v.

**BLUE CROSS AND BLUE SHIELD OF MISSOURI**, Defendant/Respondent.

No. 67330.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 17, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 20, 1995.

Application to Transfer Denied
Jan. 23, 1996.

---

Charles S. Kramer, Matthew D. O'Leary, Riezman & Blitz, St. Louis, for appellant.

Elkin L. Kistner, Latourette, Schlueter & Byrne, St. Louis, for respondent.

AHRENS, Presiding Judge.

Plaintiff, Gilbert Resnik, appeals the trial court's grant of a new trial as to damages on plaintiff's breach of contract claim and the trial court's order granting defendant judgment notwithstanding the verdict on plaintiff's claim of promissory estoppel. Defendant, Blue Cross and Blue Shield of Missouri ("BCMO"), cross-appeals the trial court's denial of its motion for judgment notwithstanding the verdict on plaintiff's breach of contract claim. We affirm.

Plaintiff was employed by defendant for approximately seven years as its Director of Corporate Planning. He was then transferred to defendant's product development division where his supervisor was Bill Elliott. This was intended to be a lateral move with the same salary and benefits as the previous position. Plaintiff remained in this position

for three years. As a result of lost benefits and postponed salary increases, plaintiff's relationship with his supervisor deteriorated. Then, in 1991, plaintiff's employment at BCMO was terminated. At that time, plaintiff and defendant entered into a separation agreement with a provision which stated:

> Reference inquiries to Blue Cross Blue Shield of Missouri will be limited to name, job title, and dates of employment only.

After his termination, plaintiff commenced a job search and he contacted Blue Cross Blue Shield of Kansas City ("BCKC"). BCKC is a separate entity from BCMO. Plaintiff spoke with Janet Baker at BCKC who indicated that she was interested in interviewing plaintiff for a position in their Corporate Planning Department. Plaintiff subsequently travelled to Kansas City to interview for the position at BCKC's expense. Ken Landau, head of the Corporate Planning Department, testified he could not recall authorizing payment of travel expenses for anyone when he did not have a serious interest in that person or when a position was not available. Plaintiff interviewed with Kathy Baker, a manager in the Corporate Planning Department at BCKC. Baker suggested Ken Landau speak to plaintiff because she believed there may be other opportunities for plaintiff at BCKC. During the interview with Landau, plaintiff revealed that his supervisor at BCMO was Bill Elliott. As a result of this interview, Landau's conclusion was that plaintiff possessed skills and a background that would be helpful to BCKC.

Sometime after the interview, Landau contacted Elliott at BCMO. The purpose of the call was to elicit information regarding plaintiff's qualifications despite the fact that plaintiff requested BCKC not contact his former employer. According to Elliott, the phone call lasted approximately forty-five minutes. However, both Elliott and Landau testified that no comments were made regarding plaintiff's qualifications. They claim the length of the conversation was attributed to a long-term friendship between the two.

Subsequent to the phone conversation between Landau and Elliott, Stuart Rawlinson Jr., an employee at BCKC and friend of plaintiff, was contacted by plaintiff in an effort to determine whether any decisions had been made regarding his employment at BCKC. After several phone calls from plaintiff, Rawlinson spoke with Vince Vanderhaar, another employee at BCKC who worked with Baker and Landau, regarding plaintiff's status. Rawlinson inferred from their conversation that "perhaps [plaintiff] should check his sources in St. Louis that gave references." Following Mr. Landau's call to Mr. Elliott, plaintiff was never called by anyone from BCKC. Plaintiff claims he was not employed by BCKC as a result of the telephone conversation between Mr. Landau and Mr. Elliott.

■ We first take up defendant's cross-appeal of the denial of its motion for judgment notwithstanding the verdict on plaintiff's breach of contract claim. In reviewing the denial of such a motion by the trial court, we view the evidence in the light most favorable to plaintiff, give plaintiff all reasonable beneficial inferences from that evidence, and ignore all evidence and inferences which contradict plaintiff's claim. *Dierker Associates, D.C., P.C. v. Gillis,* 859 S.W.2d 737, 743 (Mo.App.1993). "We will not overturn a jury verdict unless there is a complete absence of probative facts to support it." *Dildine v. Frichtel,* 890 S.W.2d 683, 685 (Mo.App.1994).

■ Plaintiff has the burden of producing "substantial evidence ... which, if true, has probative force upon the issues, and from which the trier of facts can reasonably decide a case." *Id.* Plaintiff's evidence or the inferences drawn from the evidence must establish every element necessary to recovery. *Id.* Both parties agree a separation agreement was entered into between the two. Plaintiff contends that defendant breached its promise in paragraph 7 of the agreement when Bill Elliott spoke to Ken Landau over the phone. Plaintiff's only evidence regarding the breach is circumstantial, while Mr. Elliott and Mr. Landau have both testified that no information regarding plaintiff was exchanged beyond that authorized by the separation agreement. "However, the existence of only circumstantial evidence on a material issue is no bar to recovery of and by itself." *Vaughan v. Taft Broadcasting Co.,* 708 S.W.2d 656, 661 (Mo. banc 1986). As

with any type of evidence, the circumstantial evidence must be "substantial", *Dildine,* 890 S.W.2d at 685, and it "must establish the desired inference with such certainty as to cause it to be the more reasonable and probable of the conclusions to be drawn." *Vaughan,* 708 S.W.2d at 661. In reviewing the trial court's decision, we consider all evidence favorable to plaintiff and disregard defendant's evidence unless it is also favorable to plaintiff's contention. *Id.*

Following this standard of review, we disregard the testimony of Bill Elliott and Ken Landau except to the extent it is favorable to plaintiff's claim, and examine only plaintiff's evidence. Plaintiff has shown that Ken Landau called Bill Elliott in an attempt to learn more about plaintiff and his employment records and qualifications. Under the separation agreement, plaintiff's former employer was limited to disclosing name, job title, and dates of employment only. There is evidence in the record that this call during business hours lasted for close to forty-five minutes, a time much longer than necessary to disclose those few facts. In addition, Ken Landau and Janet Baker each testified that plaintiff was more than qualified for the job and was a very likable person. Mr. Landau testified that plaintiff's skills and background could be helpful to BCKC and that plaintiff could make a contribution to both product development and planning. Ken Landau had enough interest in plaintiff to call plaintiff's former supervisor, Bill Elliott. Mr. Elliott testified that Mr. Landau indicated plaintiff was a "potential candidate" for a position. It was Mr. Landau's policy not to make a reference call unless he had made a "tentative decision" to hire the individual. Following Mr. Landau's call to Mr. Elliott, plaintiff was never called by anyone from BCKC. From these facts it may reasonably be inferred plaintiff was considered a candidate for the BCKC position until Ken Landau's phone call to Bill Elliott. Upon examining the record, we conclude that plaintiff presented sufficient evidence to submit the issue of breach of contract to the jury. Point denied.

▇ Plaintiff, in his first point relied on, argues the trial court erred in granting defendant's motion for new trial on the issue of damages. Plaintiff contends the trial court lacked jurisdiction to grant a new trial on damages because time had run on the court's power to *sua sponte* grant a new trial and defendant had not raised the basis of the verdict being against the weight of the evidence in its motion for new trial. Plaintiff is correct in asserting the court lacked jurisdiction to *sua sponte* order a new trial as judgment was entered on July 14, 1994, and the new trial was not ordered until November 10, 1994. Rule 75.01 requires the court taking action on its own initiative to do so within thirty days after judgment is entered. Rule 75.01. The court below did not order the new trial within thirty days of entering judgment, and therefore could not do so. *sua sponte.* However, the court did have the power to grant a new trial upon a motion of one of the parties. Plaintiff argues defendant did not assert "verdict against the weight of the evidence" as a basis for his motion. Although defendant did not use the exact term, it did rely on that basis for its motion, alleging [the court] "should grant a new trial on the issue of damages allegedly suffered by [plaintiff]" and that plaintiff's "damages theory was based on conjecture and speculation, as it lacked complete evidentiary support." Consequently, we conclude that defendant sufficiently raised this issue in its motion for new trial and the trial court had jurisdiction to grant a new trial on damages.

▇ The trial court granted defendant's motion after determining the damages award to be excessive and against the weight of the evidence. The trial court is in the best position to weigh the evidence, and has authority and broad discretion in granting one new trial of any issue on the ground the verdict is against the weight of the evidence. The trial court's order is presumptively correct and it will not be disturbed except in a case of manifest abuse of discretion. *Pitman v. State Farm Mutual Automobile Insurance Company,* 714 S.W.2d 230 (Mo.App. 1986); *Phillips v. Phillips,* 443 S.W.2d 144, 146 (Mo. banc 1969). *See also,* Rule 78.02. Plaintiff's calculation of his damages was speculative and based on conjecture. Plaintiff did not discuss salary in his meetings with BCKC. Instead, plaintiff based his claim for salary on what he had previously

earned when employed by defendant, despite the fact the opening in Kansas City was at a much lower level than his former position. Plaintiff had held the position of Director of Corporate Planning at BCMO for seven years and had an additional three years of experience in product development with BCMO. The BCKC position for which plaintiff interviewed was described as a "junior level position" as assistant to a manager in the corporate planning department. Defendant presented evidence the open position had a salary range between $22,000 and $35,000; more than $20,000 less than the $57,633 annual salary used by plaintiff to calculate his damages. Plaintiff argues that defendant bases the salary it offers new employees on the potential employee's previous salary. Janet Baker testified it was her experience that salary ranges at BCKC were based on skills and experience levels, as well as, the responsibilities of the job, the reporting relationship, and the number of people that are supervised by that position. Although Ken Landau stated past compensation was sometimes considered, there is no evidence a new employee would be paid a salary above the range set for the position simply because that person was paid more at a previous job. Instead, it appears past compensation may raise an employee's salary within the range set for the position.

In an effort to justify the damages awarded by the jury, plaintiff now contends his salary at BCKC would have been comparable to the salary of Bill Yates, a corporate marketing consultant. Bill Yates was moved from his position as assistant vice-president of marketing to the consultant's position, which was created specifically for him. Plaintiff contends his salary with BCKC would have been comparable to Bill Yates' salary at $74,000 instead of the $57,633 he claimed at trial, because plaintiff and Bill Yates had similar business experience. However, plaintiff's claim fails to consider the differences in the position held by Mr. Yates and the open position at BCKC. Mr. Yates held the positions of assistant vice-president and marketing consultant and the position for which plaintiff interviewed was an assistant to Janet Baker, a corporate planning manager. Janet Baker described the open position as a "planning trainee position." The trial court correctly ruled plaintiff's testimony regarding his former salary was irrelevant.

Because plaintiff's damages for loss of social security benefits and 401(k) losses were based on plaintiff's former salary, they are also speculative, and based on conjecture. No manifest abuse of discretion resulted from granting a new trial on the damages issue of this case, and therefore we will not interfere in the trial court's decision. Point denied.

In plaintiff's second point, he contends the trial court erred in granting defendant's motion for judgment notwithstanding the verdict on plaintiff's promissory estoppel count. Promissory estoppel causes a promise to be binding when that promise induces action or forbearance by the promisee and injustice to the promisee will result if the promise is not enforced. *Townes v. Howe, Inc.,* 852 S.W.2d 359, 361 (Mo.App. 1993). "A motion for judgment notwithstanding the verdict presents the issue of whether plaintiff made a submissible case. Therefore, we review the evidence in the light most favorable to the plaintiff and accord him all reasonable beneficial inferences which can be drawn from it." *White v. Union Pacific Railroad Co.,* 871 S.W.2d 50, 52 (Mo.App.1993).

The trial court granted judgment notwithstanding the verdict because it found plaintiff had not relied on defendant's promise to limit its references to name, job title, and dates of employment. The trial court believed the request by plaintiff to BCKC that they not call plaintiff's previous employers demonstrated plaintiff was not relying on defendant's promise. It is not necessary that we reach the question of whether plaintiff relied on defendant's promise because we are required to affirm the trial court's decision if it is supported by any grounds. *Lough v. Rolla Women's Clinic, Inc.,* 866 S.W.2d 851, 852 (Mo. banc 1993); *Metropolitan Tickets, Inc. v. City of St. Louis,* 849 S.W.2d 52, 53 (Mo.App.1993).

Promissory estoppel is simply one type of equitable estoppel. *Remedies,* Dobbs, p. 42 (1973). Equitable estoppel is the type of estoppel which encompasses all estoppels arising out of some form of misrep-

resentation. *Id.* The Supreme Court of Missouri has set out three required elements for a finding of equitable estoppel:

> (1) an admission, statement or act inconsistent with a claim afterwards asserted or sued upon,
>
> (2) action by the other party on the faith of such admission, statement or act, and
>
> (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement or act.

*Peerless Supply Co. v. Industrial Plumbing and Heating Co.,* 460 S.W.2d 651, 666 (Mo. 1970). The burden of proof is on the party asserting the estoppel and that party must prove every element of the estoppel claim with "clear and satisfactory evidence." *Id.* "The doctrine should be applied with great care and caution in each case, and only when all elements constituting an estoppel clearly appear." *Id.*

In many cases, Missouri courts have listed the elements of promissory estoppel as follows: "(1) a promise, (2) detrimental reliance on the promise, (3) the promisor should have or did foresee the reliance, and (4) injustice can be avoided only by enforcement of the promise." *Townes v. Howe, Inc.,* 852 S.W.2d 359, 361 (Mo.App.1993). While this version of the elements is not incorrect, it does not fully explain the estoppel cause of action. By following the *Townes* elements rather than the *Peerless* elements we have traded a longer, more tedious definition for a more concise but less instructive version. In comparing these elements to the facts of an individual case, we must remember the underlying principle of estoppel: "It stands simply on a rule of law which forecloses one from denying his own expressed or implied admission which has in good faith and in pursuance of its purpose been accepted and acted upon by another." *Peerless,* 460 S.W.2d at 666. Keeping this principle in mind, the first element is more than simply "a promise." It is a promise or action which is inconsistent with later actions by the party or a promise or action which the party later denies. *See Peerless,* 460 S.W.2d at 666.

Defendant's promise to limit references to name, position, and dates of employment was a representation to plaintiff of its future conduct and therefore, at first glance, appears to be an action for which promissory estoppel is appropriate. But the first element of a promissory estoppel cause of action has not been met in this case because there is no claim or showing that defendant's promise was inconsistent with a claim afterwards asserted by defendant. *Peerless* requires two statements or actions before the first element of an estoppel claim is satisfied. First there must be an initial statement, admission or act upon which the other party relies and then there must be some statement, admission or act *inconsistent* with the initial statement, admission or act. Defendant admits it entered into the separation agreement with plaintiff and claims it upheld its duties under that agreement. At no time has defendant denied agreeing to the limited reference or taken any action from which its denial may be inferred. Without some inconsistency in defendant's actions or words, the first element of plaintiff's promissory estoppel claim has not been met and consequently plaintiff has not stated a claim on Count II of his petition.

"Estoppel prevents a person from showing the truth contrary to a representation of fact made by him after another has relied on the representation." Restatement (Second) of Contracts, § 90 cmt. a (1981). Had plaintiff proved all required elements the doctrine of estoppel would prohibit defendant from denying its promises and burdens under the separation agreement. Because defendant has not attempted to deny it is bound by the separation agreement, estoppel is not an appropriate remedy in this case. Because plaintiff has not made a submissible case on promissory estoppel, the trial court's judgment notwithstanding the verdict on plaintiff's promissory estoppel count was proper.

Judgment affirmed.

PUDLOWSKI, J., concurs.

GRIMM, J., concurs in part and is dubious in part on separate opinion.

GRIMM, Judge, concurring in part and dubious in part.

I concur with the majority that the trial court did not err in granting defendant's motion for new trial on the issue of damages. Also, I concur with the majority that the trial

court did not err in granting defendant's motion for judgment notwithstanding the verdict on plaintiff's promissory estoppel count.

However, I am dubious concerning the majority's opinion that the trial court did not err in denying defendant's motion for judgment notwithstanding the verdict on plaintiff's breach of contract claim. I question whether plaintiff's circumstantial evidence established his desired inference that BCMO violated its contract not to divulge information about him with "such certainty as to cause it to be more reasonable and probable of the conclusions to be drawn." *See Vaughan v. Taft Broadcasting Co.*, 708 S.W.2d 656, 661 (Mo. banc 1986).